UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN L. HARRIS,<br><br>        Plaintiff,<br><br>    vs.<br><br>BURNES, et al.,<br><br>        Defendants. | **1:19-cv-01409-NONE-GSA-PC**<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED WITH PLAINTIFF'S EXCESSIVE FORCE CLAIMS FOUND COGNIZABLE BY THE COURT AGAINST DEFENDANTS BURNES, FLORES, AND ALEJO; THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED WITHOUT LEAVE TO AMEND**<br>**(ECF No. 32.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I.    BACKGROUND

Darren L. Harris ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on July 22, 2019, at the United States District Court for the Central District of California.  (ECF No. 1.)  On September 26, 2019, the case was transferred to this court.  (ECF No. 19.)  On September 15, 2020, the court screened the Complaint and issued an order requiring Plaintiff to either (1) notify the court that he is willing to proceed only with the

excessive force claims found cognizable by the court, or (2) file an amended complaint.  (ECF No. 27.)  On January 11, 2021, Plaintiff filed the First Amended Complain

, which is now before the court for screening. (ECF No. 32.)  28 U.S.C. § 1915.

## II.   SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

## III.   SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT (FAC)

Plaintiff is presently incarcerated at the California Substance Abuse Treatment Facility (SATF) in Corcoran, California.  The events at issue in the First Amended Complaint allegedly took place at Corcoran State Prison (CSP) in Corcoran, California, when Plaintiff was

incarcerated there in the custody of the California Department of Corrections and Rehabilitation. Plaintiff names as defendants Sergeant Burnes, Correctional Officer (C/O) J. Flores, Lieutenant C. Munoz, and C/O J. Alejo (collectively, "Defendants"). All of the Defendants are sued in their individual capacities. A summary of Plaintiff's allegations follows:

On July 12, 2019, Defendants C/O Flores and C/O Alejo came to Plaintiff's cell door for yard release into the SHU (Security Housing Unit) Exercise Yard. Plaintiff was strip searched and his clothing was searched, with negative results. Plaintiff was handcuffed and taken out of the cell. As Plaintiff was being escorted by Defendants Flores and Alejo, Defendant Flores kept tugging and pulling on Plaintiff's left arm. Plaintiff believed that Flores was attempting to provoke him. Defendant Flores asked Plaintiff, "Do you have a pen?" (FAC, ECF No. 32 at 3 ¶ 11.) Plaintiff said "No." (Id.) (Not two minutes before, Defendants Flores and Alejo strip searched Plaintiff, including his clothing, before taking him out of the cell.) Once they left A-section and were out in the rotunda, Defendant Flores shoved Plaintiff against the wall. Plaintiff was searched again with negative results. Flores pulled Plaintiff off the wall, abruptly snatching him by his left arm aggressively and repeatedly saying, "You call me a bitch," again attempting to provoke Plaintiff. (Id. at 4 ¶14.) Flores is known for attacking prisoners while they are in restraints. Plaintiff was afraid of Flores and called out to everyone to watch what was going on. When another officer approached Flores, Flores shoved Plaintiff against the wall and told the officer, "He's a tough guy." (Id. at 4 ¶ 15.) Plaintiff said he was not a tough guy and the two officers each called Plaintiff a bitch. Plaintiff had not done anything wrong. He was snatched off the wall, escorted to the exercise yard cage and released inside the cage.

After yard, Plaintiff was escorted back to his cell and discovered that his cell had been trashed by Defendant Flores. Flores took Plaintiff's toothbrush, asthma inhaler, legal documents, bedding, and personal garments. This was intimidation, retaliation, and an illegal search and seizure without probable cause.

Later that day Flores came to Plaintiff's door and gave Plaintiff a falsified cell/locker search slip/notice and threatened him with a Rules Violation Report (RVR) for manufactured or manufacturing alcohol. Plaintiff notes that he is housed in the Corcoran Security Housing Unit

(SHU).

On July 14, 2019, defendants C/O Flores and C/O Alejo came to Plaintiff's door to pick up Plaintiff's breakfast tray.  Plaintiff handed C/O Flores the food tray through the cell door's tray slot, and Flores said, "Don't be scared."  (Id. at 5 ¶ 19.)  Again, Flores was trying to provoke Plaintiff and intimidate him to respond.  Alejo asked Plaintiff if he wanted to go to yard.  Plaintiff said, "Yes."  (Id. at 5 ¶ 20.)  Flores then said, "No, he refuses."  (Id.)  Plaintiff responded that he wanted to go to yard.  Flores threatened Plaintiff by saying, "I'll come in your cell."  (Id.)  Plaintiff asked for the Sergeant, and they left the door.

Flores and Alejo came back to Plaintiff's door under the guise of yard release and to strip search Plaintiff.  A strip search is basic for release to SHU exercise cages.  Plaintiff complied.  Plaintiff saw defendant Sergeant Burnes downstairs in the dayroom with the hand-held metal detector as usual for a weapons search, again before going out to the exercise cages.  Plaintiff called out to Sergeant Burnes asking, "Can I talk to you?  Flores keeps threatening me, I don't feel safe with him."  (Id. at 5 ¶ 23.)  Plaintiff asked again and then complied with being handcuffed, assuming it was safe while Sergeant Burnes was present.

Defendants Flores and Alejo handcuffed Plaintiff behind his back, as is standard.  Alejo pulled Plaintiff out of the cell and took him downstairs to the dayroom where he tried to talk to Sgt. Burnes about Flores threatening him.  Sgt. Burnes passed over Plaintiff with the hand-held metal detector ignoring Plaintiff's plea to talk to him, and told Flores and Alejo to take Plaintiff into the rotunda.

Plaintiff assumed he was safe and Sgt. Burnes was going to talk to him in the rotunda about Flores's threats.  Flores and Alejo escorted Plaintiff into the rotunda with Sgt. Burnes following.  Plaintiff was taken into the left hand side security cage and physically attacked by the officers from behind.  Flores, Alejo, and Sgt. Burnes were kicking Plaintiff on both sides of his ribs and stomped him in the back and head before he lost consciousness for the second time.

When Plaintiff came to he was pulled up off the ground by Defendants Flores and Alejo, with Defendant Sgt. Burnes standing in front of him holding Plaintiff's left shoe.  Plaintiff's right

shoe was still on his foot.  Plaintiff was taken back to his cell with his chin busted and bleeding, both sides of his ribs aching, both knees scraped and bruised, his wrist in pain, his left elbow throbbing in pain and swollen, feeling dizzy and slightly nauseated, and finding it hard to breathe.

Plaintiff saw a female and male officer, both Hispanic, in the control tower.  C/O J. Beer [not a defendant] and Nurse Velasquez [not a defendant] were in the rotunda and could witness the other people who were present during the attack.  Nurse Gallant [not a defendant] could also witness that Plaintiff had an asthma inhaler issued, other than the one C/O Flores took out of the cell during his cell search on July 12, 2019.  Plaintiff was reissued two new asthma inhalers after C/O Flores took one, so he now has three.  Plaintiff showed them to Nurse Gallant on that day.

Nurse Velasquez came to Plaintiff's cell door and asked if Plaintiff was all right.  Plaintiff said, "You saw what happened, I need to see the doctor.  Can I please see a doctor?  I can't breathe.  It's hard for me to breathe, my ribs might be broken."  (FAC at 7-8 ¶ 38.)  Velasquez reluctantly left the section and returned with male nurse Gallant.

Nurse Gallant approached Plaintiff's door full of glee with a smile.  Plaintiff asked to see a doctor and Gallant said, slightly bouncing up and down with glee, "The officers say you got caught with some metal."  (Id. at 8 ¶ 39.)  Plaintiff said, "Where would I get some metal from, they're lying."  (Id.)  Gallant started going on again until Nurse Velasquez came over and stopped him.  Plaintiff again asked to see the doctor.

Plaintiff was taken to CTC Medical in a van by RN Autrey [not a defendant].  Plaintiff asked him if he could speak to a Sergeant or Lieutenant and told Autrey that he wanted to speak to the Institutional Security Unit (ISU).  Autrey spoke to the Sergeant in CTC and gave Plaintiff his message to talk to Sgt. Burnes.  The CTC Medical Sergeant sent the message after he went to talk to Sgt. Burnes.  That sergeant, RN Autrey, C/O Alana [not a defendant], and C/O A. Esponoiza [not a defendant] are witnesses.  Several inmates were also witnesses.  Defendants Flores and Alejo were bribing prisoners with TV, etc., not to be witnesses.

The inmate in 4AIL-A section and the correctional officers that worked 4AIL and 4AIR, and in the middle of the building's offices, are witnesses to the July 12, 2019 attack.  Plaintiff asked C/Os J. Beer, Ranschke, Contreras, and Bartolo [not defendants] to call ISU for him, that

he needed to talk to them.  They refused.  They are witnesses.

Due to Defendants' actions Plaintiff suffered other injuries and two broken ribs, which were discovered after x-rays were taken.

On August 21, 2019, Plaintiff was denied due process in the disciplinary hearing of falsified retaliatory Rules Violation Reports, log # 06874999 and # 06875416 written against Plaintiff by defendant Flores on July 12 and 14, 2019.  The SHO (Senior Hearing Officer) Defendant Lt. Munoz held the hearing in the rotunda at about 1:45 p.m.  At this time 2nd watch officers are usually out of the building on their way home.  Plaintiff believes the SHO, Lt. Munoz, held the hearing at this time to deprive Plaintiff of staff witnesses.  The SHO held the hearings for both falsified RVRs at the exact same time.  There was no evidence taken from Plaintiff's cell and viewed, tested, identified, or disposed of by any other officer.  Defendant Flores was the only person claiming alcohol was found in Plaintiff's cell.  There was no evidence, no bags or containers, no stinger [*sic*], no alcohol, no witnesses, nor anyone else collaborating Defendant J. Flores's retaliatory false allegations.  The RVR's disciplinary hearing results were approved on July 13, 2019 by D. Perez [not a defendant].  On the RVR written by Defendant Flores, the reviewing supervisor is allegedly Lt. A. Randolph [not a defendant], on July 14, 2019.  The Disciplinary Hearing Results report says action taken, date 7/13/19 J. Gallagher [not a defendant]. On the RVR it states classified by A. Randolph on July 14, 2019.  Without the RVR being properly reviewed by supervisory staff and classified by the appropriate staff, Plaintiff did not receive notice.  All dates and signatures appear to be false or forged and the RVR was written on the same date as the assault and battery by C/Os, on July 14, 2019.

Plaintiff was not assigned an Investigative Employee (IE) by the Chief Disciplinary Officer.  Plaintiff was on lockdown.  Plaintiff was not assigned any staff assistance.  Plaintiff is a participant in mental health under CCCMS level of care.  Plaintiff was not allowed to call witnesses.  The SHO made it impossible for witnesses to be called by holding the hearing at shift change.  Plaintiff still requested a staff witness to preserve the right, but was denied.  Plaintiff was not allowed to present documentary evidence.  Plaintiff had the weekly menu to show there was no way a person in the SHU could have enough fruit to even start to make alcohol.

///

Plaintiff was not assigned an IE for RVR Log #06875416.  C/O E. Garza [not a defendant] was objected to and her report falsified.  Plaintiff did not get a chance to see the incident reports, photos, etc., until 13:00:47, which Plaintiff believes was planned deception.  Plaintiff did not receive all additional information within fifteen days.   He was not allowed to present documentary evidence.  Medical reports show two broken ribs, etc., which is inconsistent with the RVR's inferences.  The photo of the alleged metal showed the manipulated asthma inhaler Plaintiff believes Defendant Flores took out of Plaintiff's cell on July 12, 2019, to set up an alibi for the assault and battery against Plaintiff.  Plaintiff was not allowed witnesses.  Defendant Flores happened to walk back into the building to get his property, and Plaintiff pointed him out to the SHO and called him over.  Plaintiff got to ask two or three questions and then Flores left the hearing unannounced.  Plaintiff did not receive a valid notice of pending charges.

After disposition of RVR Log #06874999, Plaintiff was penalized with 30 days credit loss, 30 days loss of canteen, 10 days yard restriction privileges, 30 days lost packages privileges, and 30 days property restrictions.

Penalties from disposition of RVR Log #06875416 included 90 days credit loss, 10 days yard recreation privileges, and 60 days property restriction.

***Retaliation***

Plaintiff extensively used the 602 prison appeal process between November 15, 2012 and January 8, 2020.[1]  Plaintiff alleges that the time period before the adverse actions against him in this Complaint starts at the date of March 25, 2019.  Plaintiff believes that on July 12, 2019, when Defendants Flores and Alejo were escorting Plaintiff to the SHU yard and Defendant Flores was tugging on Plaintiff's arm and repeatedly asking Plaintiff, "You calling me a bitch," is directly linked to the aforementioned [in ¶¶ 97-98 of the FAC] dismissed falsified RVR that should have been removed from Plaintiff's Central File.  (See ¶ 99 of the FAC.)

---

[1]  The court has not listed all of the numerous 602 appeals in this order that Plaintiff refers to in the First Amended Complaint.  Plaintiff's list of appeals and grievances can be found in the First Amended Complaint, ECF No. 32 at  15-18 ¶¶ 78-99.

///

Plaintiff also alleges that he was intentionally falsely convicted and illegally sentenced, with retaliation by outside agencies that are messaging CDCR officials through the computer systems, to stop Plaintiff's release.  (See ¶ 100 of the FAC.)

### ***Injuries to Plaintiff***

Due to the unnecessary force from the assault and battery by defendants Burnes, Flores, and Alejo, Plaintiff suffered broken ribs, loss of consciousness, concussion, head trauma, temporary color blindness in left eye, a loosened front right tooth with seemingly permanent nerve damage, impaired breathing (from broken ribs), back pain, shoulder pain, bruised and lacerated knees, elbow damage, mental anguish, fear, intimidation, and a chill on Plaintiff's exercise of the First Amendment right to freedom of speech and redress of grievances.

On August 22, 2019, defendant J. Flores along with C/Os Loza [not a defendant], Velasco [not a defendant], and another officer [not a defendant] raided Plaintiff's cell and confiscated the following personal property items:  television, along with 2 Co-ax cables and splitter, and digital antenna; 2 thermal shirts; thermal bottoms; 3 sweat pants; left shoe; beanie; black comb; and 26 photos, of which one was clearly a religious photo whose confiscation violates Plaintiff's First Amendment right to free exercise of religion.  Plaintiff attempted to purchase a new TV from the vendor Union Supply direct.  Correctional Officers contacted the vendors and told them not to sell Plaintiff a TV, making Plaintiff suffer an additional 60 to 90 days of retaliatory punishment without due process.  Plaintiff did not receive his property back until December 27, 2019.

### ***Request for Relief***

As relief, Plaintiff requests a declaratory judgment, injunctive relief including a federal investigation, and monetary damages including punitive damages.

## IV.   PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

> secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.    Excessive Force

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

The court finds that Plaintiff states cognizable claims against Defendants Flores, Alejo, and Burnes for use of excessive force against him in violation of the Eighth Amendment.

**B.    Assault and Battery – State Law Claims**

Plaintiff seeks to proceed with claims for assault and battery. These are state law claims. Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state laws are not sufficient to state a claim for relief under § 1983. To state a

claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S. 693 (1976).  Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.  In this instance, the Court has found that Plaintiff states cognizable claims in the First Amended Complaint.

However, to state a cognizable state law claim, Plaintiff must sufficiently plead the claim presentation requirement contained in California Government Code § 900 et seq.  California's Government Claims Act[2] establishes certain conditions precedent to the filing of a lawsuit against a public entity.  State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1237, 90 P.3d 116, 118 (2004). "[A] plaintiff must timely file a claim for money or damages with the public entity, (§ 911.2.), and the failure to do so bars the plaintiff from bringing suit against that entity, (§ 945.4.)."  Id. Compliance with the claim presentation requirement is an element of the cause of action, Bodde, 32 Cal.4th at 1240, and is required, Mangold v. California Public Utilities Com'n, 67 F.3d 1470, 1477 (9th Cir. 1995), and "failure to file a claim is fatal to a cause of action," Hacienda La Puente Unified School Dist. Of Los Angeles v. Honig, 976 F.2d 487, 495 (9th Cir. 1992); City of Stockton v. Superior Court, 42 Cal.4th 730, 738 (Cal. 2007) at 738; Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007).

The government claim must be filed or presented to the public entity no later than six months after the cause of action accrues.  California Government Code § 911.2.  A plaintiff "must allege facts demonstrating or excusing compliance with the claim presentation requirement." Robinson v. Alameda Cty., 875 F. Supp. 2d 1029, 1043 (N.D.Cal. 2012) (quoting Bodde, 32 Cal.4th at 1243; Mangold, 67 F.3d at 1477 (quoting Snipes v. City of Bakersfield, 145 Cal.App.3d 861, 865, 193 Cal.Rptr. 760 (1983) ("Where compliance with the [CGCA] is required, the plaintiff must allege compliance or circumstances excusing compliance, or the complaint is subject to general demurrer.")); D.K. ex rel. G.M. v. Solano County Office of

---

[2] Formerly known as the California Tort Claims Act.  City of Stockton, 42 Cal.4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

Education, 667 F.Supp.2d 1184, 1195 (E.D.Cal. 2009); Karim–Panahi v. Los Angeles Police Department, 839 F.2d 621, 627 (9th Cir. 1988); Flanagan v. Benicia Unified School District, 2008 WL 435355 (E.D.Cal. Feb. 14, 2008)).

In the present case, Plaintiff has not provided any allegation that he filed a claim or sufficiently pleaded facts demonstrating that he complied with the Government Claims Act in bringing his state law claims. Therefore, Plaintiff's state law claims should be dismissed, without prejudice to bringing the claims in state court.

**C.   Personal Property**

Plaintiff alleges that on July 12, 2021, Defendant Flores took some of his personal property when Flores searched Plaintiff's cell. Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, a plaintiff has no due process claim based on the defendants' unauthorized deprivation of his personal property—whether intentional or negligent—if a meaningful state post-deprivation remedy for his loss is available. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). California's tort claim process provides that adequate post-deprivation remedy. Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); see also Teahan v. Wilhelm, 481 F. Supp. 2d 1115, 1120 (S.D. Cal. 2007); Kemp v. Skolnik, No. 2:09-CV-02002-PMP, 2012 WL 366946, at *6 (D. Nev. Feb. 3, 2012) (finding prisoner's alleged loss or destruction of newspaper, magazines, and books failed to state a Fourteenth Amendment claim pursuant to Palmer and noting that "[i]f Plaintiff wishes to recoup the value of the alleged lost materials, he will have to file a claim in small claims court in state court.").

Therefore, Plaintiff's loss of personal property does not constitute a due process claim.

**D.   After-Occurring Events Arising on August 21, 2019**

Plaintiff alleges that on August 21, 2019, a disciplinary hearing was held on Plaintiff's charges under two Rules Violation Reports (RVRs), Log #06850507 for possession of alcohol, and Log #06875416 for possession of metal. Plaintiff alleges that he is completely innocent of

these charges and that his rights to due process were violated.  Plaintiff also alleges that on August 21, 2021, officers raided Plaintiff's cell and confiscated some of his personal property items, violating Plaintiff's First Amendment religious rights and resulting in 60 to 90 days of retaliatory punishment without due process.

Plaintiff filed the original Complaint for this action on July 22, 2019, which was before Plaintiff's disciplinary hearings and confiscation of property on August 21, 2021.  Plaintiff may not add new allegations or claims to the Complaint occurring after the original Complaint was filed.  The court cautioned Plaintiff in the prior screening order that "he has not been granted leave to add allegations of events occurring after the initiation of this suit on July 22, 2019." (ECF No. 27 at 13:9-10.)  Therefore, Plaintiff's claims concerning the August 12, 2019 disciplinary hearings and confiscation of property should be dismissed from this case.  Plaintiff may file new cases bringing these claims, if he wishes.

Therefore, the court finds that Plaintiff's claims arising on August 12, 2021, should be dismissed from this case, without prejudice.

### E.    Retaliation – First Amendment Claim

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim.  Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  The Court must "'afford appropriate deference and flexibility' to prison officials

in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).  The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of."  Pratt, 65 F.3d at 808.

Plaintiff alleges that on July 12, 2019, Defendant C/O Flores shoved Plaintiff against a wall, trashed Plaintiff's cell, took Plaintiff's property, falsified a cell search slip and RVR, assaulted him, and threatened him with a false RVR.  On July 14, 2019, Defendants Flores, Alejo, and Burnes physically attacked Plaintiff from behind and injured him. Based on these allegations, Plaintiff has satisfied the first element of a retaliation claim because Defendants Flores, Alejo, and Burnes's acts against Plaintiff clearly constitute adverse actions.

Plaintiff alleges that he extensively used the 602 prison appeal process between November 15, 2012 and January 8, 2020, with March 25, 2019 as the starting date of adverse actions against him in this complaint.  He believes that the harassment against him during the July 12, 2019, escort, when Defendant Flores tugged on Plaintiff's arm and repeatedly asked him, "You calling me a bitch," is directly linked to the dismissed falsified RVR that should have been removed from Plaintiff's Central File.  Plaintiff alleges that Defendant Flores retaliated against him for filing grievances for the search and seizure of Plaintiff's property on July 12, 2020, and that Defendant Flores verbally abused Plaintiff and tugged on his arm out of retaliation for Plaintiff's First Amendment activities.

Plaintiff has shown that adverse actions were taken against him by Defendants, and that he filed numerous 602 grievances/appeals against Defendants and other prison officials. However, Plaintiff's allegations purporting to connect Defendants' adverse actions with Plaintiff's participation in the prison grievance process are essentially conclusory, with no facts to show a plausible connection or nexus between the two.   Plaintiff has not shown that any of the Defendants acted against him *because* he filed prison grievances or otherwise exercised his First Amendment rights.  Plaintiff's belief that adverse acts were linked to his protected behavior are insufficient without supporting facts to establish a claim for retaliation.

Accordingly, based on the foregoing, the court finds that Plaintiff fails to state a claim for retaliation.

///

### F. **False Reports**

Plaintiff claims that Defendant Flores wrote false disciplinary reports against him and falsified a cell-search slip.  He also claims that evidence used to find him guilty of Rules Violations was false.  These allegations, even if true, do not raise a constitutional claim because there is no due process right to be free from false disciplinary charges. The falsification of a disciplinary report does not state a standalone constitutional claim.  <u>Canovas v. California Dept. of Corrections</u>, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); <u>see</u> <u>e.g.</u>, <u>Lee v. Whitten</u>, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012).  There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir. 1989); <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986)).  "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue.   The Constitution demands due process, not error-free decision-making." <u>Jones v. Woodward</u>, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing <u>Ricker v. Leapley</u>, 25 F.3d 1406, 1410 (8th Cir. 1994); <u>McCrae v. Hankins</u>, 720 F.2d 863, 868 (5th Cir. 1983)).  Therefore, Plaintiff has no protected liberty interest against false information being reported against him.

### G. **Verbal Harassment and Threats**

Plaintiff alleges that he was verbally harassed and threatened by Defendants.  Mere verbal harassment or abuse, including the use of racial epithets, does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983, <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987).  Verbal threats alone do not rise to the level of a constitutional violation.  <u>Gaut v. Sunn</u>, 810 F.2d 923, 925 (9th Cir. 1987).  Therefore, Plaintiff fails to state a claim for verbal harassment and threats.

### H. **Search and Seizure – Fourth Amendment**

Plaintiff alleges that his Fourth Amendment rights to be free from unreasonable searches and seizures were violated when his personal property was interfered with by Defendant Flores. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Imprisonment does not automatically deprive an inmate of all constitutional rights." Goldhaber v. Higgins, 576 F. Supp.2d 694, 716 (W.D. Pa. 2007) (citing Beard v. Banks, 548 U.S. 521, 126 S.Ct. 2572, 2577, 165 L.Ed.2d 697, 704 (2006) ). "Nevertheless, due to the very nature of incarceration, it is difficult to characterize a search or seizure occurring in the prison context as 'unreasonable' within the meaning of the Fourth Amendment." Goldhaber, 576 Supp.2d at 716 (citing Palmer, 468 U.S. at 525–526.) "In Palmer, 468 U.S. 517, 536, 104 S.Ct. 3194, 82 L.Ed.2d 393, the Supreme Court declared that '[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.'" Goldhaber, 576 Supp.2d at 716. Since Palmer, there has been considerable uncertainty as to whether prison inmates are ever entitled to Fourth Amendment protection. Id.; Vernonia School District 47J v. Acton, 515 U.S. 646, 681, 115 S.Ct. 2386, 2404, 132 L.Ed.2d 564, 592 (1995) (O'Connor, J., dissenting) (noting that it is not clear whether people in prison categorically lack the protections of the Fourth Amendment.) This right extends to incarcerated prisoners; however, the reasonableness of a particular search is determined by reference to the prison context. Here, Plaintiff's complaint plainly does not put at issue rights that would be protected by the Fourth Amendment's guarantee of freedom from "unreasonable searches and seizures" by government officials. See Byrd v. Maricopa Cnty. Bd. of Supervisors, 845 F.3d 919, 922 (9th Cir. 2017.) It is well-settled that a state prisoner has no reasonable expectation of privacy in his cell and is not entitled to Fourth Amendment protection against unreasonable searches and seizures. See Palmer, 468 U.S. at 527-28; Nakao v. Rushen, 766 F.2d 410, 412 (9th Cir. 1985).

Therefore, Plaintiff fails to state a claim for violation of his rights under the Fourth Amendment.

## I.    Conspiracy

Conspiracy under § 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal quotation marks omitted) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989)), and that an "'actual deprivation of his constitutional rights resulted from the alleged conspiracy,'" Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989) ).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers, 865 F.2d at 1541).  A plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. Miller v. Cal. Dep't of Soc. Servs., 355 F.3d 1172, 1177 n.3 (9th Cir. 2004) (citing Woodrum, 866 F.2d at 1126).  The mere statement that defendants "conspired" or acted "in retaliation" is not sufficient to state a claim.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

The Ninth Circuit requires a plaintiff alleging a conspiracy to violate civil rights to "state specific facts to support the existence of the claimed conspiracy." Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 929 (9th Cir. 2004) (citation and internal quotation marks omitted) (discussing conspiracy claim under § 1985); Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." (citation omitted) ).

Plaintiff's allegations of conspiracy under § 1983 fail to state a claim because his allegations are conclusory and merely speculative.  Although Plaintiff uses phrases like "conspired with" and "conspiracy to pervert or obstruct justice," he does not provide any specific facts showing that any of the Defendants had an agreement to retaliate against him or otherwise violate his constitutional rights.  There is little indication of any agreement between any of the defendants.  Therefore, Plaintiff fails to state a claim for conspiracy.

**J.      Habeas Relief**

Plaintiff alleges that he is a falsely convicted and illegally sentenced prisoner who is being retaliated against by officials from outside agencies that are messaging CDCR officials through the computer systems (SOMS and ERMS) to stop Plaintiff's release.  (ECF No. 32 at 18 ¶ 100.)  When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus.  Preiser v. Rodriguez, 411 U.S. 475 (1973); Young v. Kenny, 907 F.2d 874 (9th Cir. 1990), cert. denied 11 S.Ct. 1090 (1991).  Moreover, when seeking damages for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."  Heck v. Humphrey, 512 U.S. 477, 487-88 (1994).  "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."  Id. at 488.  This "favorable termination" requirement has been extended to actions under § 1983 that, if successful, would imply the invalidity of prison administrative decisions which result in a forfeiture of good-time credits.  Edwards v. Balisok, 520 U.S. 641, 643–647 (1997).

The Complaint does not contain any allegations to show that Plaintiff's conviction or sentence have been reversed, expunged, declared invalid, or called into question by a writ of habeas corpus.  Therefore, Plaintiff may not challenge his conviction or sentence in this § 1983 action.  Such claims must be dismissed without prejudice to filing a petition for writ of habeas corpus.

**K.      Relief Requested**

In addition to monetary damages, Plaintiff requests injunctive and declaratory relief.

Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court

finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Plaintiff seeks orders requiring Defendants Burnes, Flores, Alejo, and Munoz to submit to a polygraph examination, ordering witnesses to submit to a polygraph examination, granting all requests in Plaintiff's CDC-602 appeals, and ordering an MRI on Plaintiff's head area, rib area, and back. These requests are simply not narrowly tailored to address Plaintiff's claims in this case and therefore must be denied.

Plaintiff also requests an FBI investigation and expungement of his disciplinary convictions. Conducting an FBI investigation would not remedy the past violation of Plaintiff's constitutional rights and therefore is not narrowly drawn to correct the alleged past violations. The expungement of Plaintiff's disciplinary convictions is not available as relief in a § 1983 case.

Moreover, Plaintiff's requests for injunctive relief concerning CSP are moot. Plaintiff is currently housed at SATF, and the past events at issue in this action occurred at CSP. When an inmate seeks injunctive relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).

As for declaratory relief, such request should be denied because it is subsumed by Plaintiff's damages claim. See Rhodes v. Robinson, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

## V.   CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff states cognizable claims in the First Amended Complaint against defendants C/O J. Flores, C/O J. Alejo, and Sergeant Burnes for use of excessive force in violation of the Eighth Amendment. However, Plaintiff fails

to state any other cognizable claims against any of the Defendants upon which relief may be granted under § 1983.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Here, the court is persuaded that Plaintiff is unable to allege any additional facts, based upon the circumstances he challenges, that would state a cognizable claim under § 1983. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). The court finds that the deficiencies in Plaintiff's claims outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.  This case proceed only against Defendants C/O J. Flores, C/O J. Alejo, and Sergeant Burnes for use of excessive force in violation of the Eighth Amendment;

2.  All other claims and defendants be dismissed from this case based on Plaintiff's failure to state a claim;

3.  Defendant Lieutenant C. Munoz be dismissed from this case based on Plaintiff's failure to state any claims against him;

4.  Plaintiff's claims for retaliation, due process violations, false reports, interference with personal property, after-occurring events, conspiracy, state law claims, verbal harassment, challenge to conviction or sentence, and Fourth Amendment search and seizure be dismissed from this case based on Plaintiff's failure to state a claim;

5.  Plaintiff's claims challenging his conviction or sentence be dismissed without prejudice to filing a petition for habeas corpus;

6.  Plaintiff's state law claims be dismissed without prejudice to bringing those claims in state court; and

7.  This case be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within fourteen (14) days** after the date of service of these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 17, 2021**                    **/s/ Gary S. Austin**
                                UNITED STATES MAGISTRATE JUDGE